**Harold T. JONES and the Petersen Manufacturing Company, Incorporated, a Nebraska corporation, Plaintiffs,**

**v.**

**SEARS, ROEBUCK & CO., a New York corporation, and Parker Manufacturing Company, a Massachusetts corporation, Defendants.**

**Civ. A. No. 5982.**

United States District Court
D. Colorado.

Sept. 20, 1960.

Herbert J. Jacobi, Washington, D. C., and Edwin L. Spangler, Jr., Jerome R. Strickland, Denver, Colo., on the brief, for plaintiffs.

Cedric W. Porter, Porter, Chittick & Russell, Boston, Mass., Philip H. Sheridan, Denver, Colo., for defendants.

CHRISTENSON, District Judge.

The above-entitled case was tried to the Court without the intervention of a jury at Denver, Colorado, April 13th, 14th and 15th, 1960, and has now been submitted for decision upon oral arguments and written briefs. Being fully advised, I make the following:

### Findings of Fact

1. This suit is for infringement of U. S. Letters Patent No. 2,514,130, issued July 4, 1950, to plaintiff Harold T. Jones, and entitled "Locking Wrench and Pliers".

2. The said Harold T. Jones, now a resident of Pueblo, Colorado, and formerly of Vallejo, California, is the owner of patent No. 2,514,130 in suit.

3. The plaintiff Petersen Manufacturing Company, Inc., a Nebraska corporation, located at De Witt, Nebraska, is the exclusive licensee of the plaintiff Jones under the patent in suit.

4. Defendant Parker Manufacturing Company, Incorporated, a Nebraska corporation, located at Worcester, Massachusetts, is the manufacturer of the wrenches claimed by plaintiffs to infringe the said Jones patent.

5. The defendant Sears, Roebuck & Co., Inc., is a New York corporation with its principal place of business in Chicago, Illinois. It operates retail stores throughout the United States, including Denver, Colorado, procures the toggle wrenches charged to infringe the Jones patent in suit from Parker Manufacturing Company, and sells them throughout the United States to the consuming public.

6. The suit is openly defended by Parker Manufacturing Company under an indemnity agreement with Sears, Roebuck & Co.

7. The Court has jurisdiction over the subject matter of this action and the said parties.

8. The subject matter of the suit is a toggle wrench, or Lever Jaw Wrench, as it is called by Sears, Roebuck & Co. in its sales literature. Toggle wrenches themselves are quite old, being first shown in Petersen Patent No. 1,489,458, granted April 8, 1924, and having been manufactured for many years in the millions by the plaintiff company. The operating principle of the toggle wrench is that in connection with the usual plier-type wrench action of jaws of a fixed handle and a movable handle, a toggle joint is comprised of the pivoted movable handle and a toggle link pivotally engaged at its lower end to the movable handle constituting the central pivot point. When this central pivot of the toggle joint crosses the "dead center position" the toggle joint imposes a locking action on the movable jaw of the wrench to hold the work piece in a vice-like grip. Great force is therefore re-

quired to move the center pivot point back across the "dead center line" and thus "break the toggle" to release the movable jaw. The use of both hands by an operator often would be called for, and this proved to be difficult under various circumstances, especially when the wrench was used in restricted spaces.

9. The Jones improvement upon which the patent in suit is based was a release lever cooperating with the handle and toggle link of such wrench to facilitate a quick and easy opening of the jaws. Present commercial embodiments of this improvement incorporate the release lever either pivoted on the movable handle and camming against the toggle link (as in the Petersen product), or pivoted on the toggle link and camming against the movable handle (as in the Parker wrench), to produce the same result of prying the jaws of the wrench apart.

10. In the specifications filed by Jones in support of his application for the subject patent the Jones Quick Release Lever was described as comprising a release lever pivotally mounted on the movable handle, within the channel formed by the sides of the movable handle, the forward end or toe of which when the lever was moved toward the fixed handle came against the lug on the bifurcated toggle link and thus moved the center pivot point across the "dead center line". Jones' release lever as then and there described also had a heel portion formed by offsetting the rearwardly extending handle portion of the release lever, so that when the release lever was moved away from the fixed handle, it rocked on its heel and the toe portion cammed against the lug on the toggle link, again causing the center pivot point to cross "the dead center line" and thus break the toggle. Hence as specifically described and exemplified in its preferred form in the specifications, Jones' lever in essence pivoted on the movable handle and cammed against the toggle link to break the toggle and open the jaws of the wrench.

11. Jones' claims, numbered 1, 4 and 5, are alleged by plaintiffs to be infringed

by the Parker device. The first two of these read directly upon the Jones device exemplified in the specifications as aforesaid, but do not read directly upon the accused device. Jones' claim 5 is broad enough to directly cover and read upon a lever pivoted on the toggle link and camming against the movable jaw to break the toggle. It describes the improvement as an elongated toggle release lever having a portion extending longitudinally and rearwardly in the space between the channel shaped handle lever and the toggle link, pivotally connected with one and provided with cam means engaging the other when it is rocked about its pivot, said toggle release lever having another portion projecting rearwardly beyond the rear end of the handle lever disposed in position to be engaged by a finger of the hand holding the wrench. Hence claim five specifically reads on a release lever pivotally mounted on the toggle and camming against the movable handle, as well as upon one pivotally mounted on the movable handle and camming against the toggle link.

12. Despite the limited exemplification in his specifications and claims 1 and 4 specifically referring to the latter release mechanism, Jones was the first in the art to disclose a release lever of any kind between the handle of a plier-type toggle wrench which lever cooperated with the movable handle and toggle link to pry open the jaws of the wrench. The evidence further shows, and the Court finds, that in addition to a model of a lever camming on the toggle link, Jones constructed a model plier-type wrench having a release lever pivoted on the toggle link at the time his patent application was being prepared, and that such model was shown to the patent attorney handling the application immediately after the application was filed. It was Jones' intention and understanding at all times during the prosecution of the application, and he was advised by his attorney, that such variation would be covered by the specifications and claims of his application whether the lever were pivoted on the toggle link or on the movable handle.

13. The defendants' alleged infringing device in essence is a lever which accomplishes the same result as the Jones patent in suit by pivoting on the toggle link and camming against the movable handle of the wrench. More specifically, it is a single curved lever, pivotally mounted by a cross pin on the toggle link above the channel-shaped movable handle. It has a bifurcated, parallel sided inwardly extending camming portion straddling the toggle link, to cam against the upper edges of the movable handle. Parker's toggle link is a reversely curved lever for mechanical and functional reasons to fit and operate in the Parker wrench. This differs from Jones' toggle link which is bifurcated and substantially rectanguler in outline; yet in essence the respective ensembles involve only one substantial distinction which might be considered material under the issues here, i. e., in one the lever pivots on the movable handle and cams against the toggle link and in the other it pivots on the toggle link and cams against the movable handle to release the locking of the jaws of the wrench.

14. Jones' claim number 1, as mentioned heretofore, does not read directly upon the release lever of the Parker wrench, despite some language urged by plaintiffs to indicate that it does. But it is clear that defendants' device produces the same result in substantially the same way and by substantially the same means, within the doctrine of equivalents. The variation of the pivoting off the toggle link and camming against the movable handle involves a mere reversal of parts. I do not consider the point made by defendants, that the lever form of one could not be utilized without modification by the other, to be significant, for of course many formal variations could be introduced to preclude this, and there are formal variations which preclude it here, without constituting an essentially different device. It need not be decided whether these variations would involve substan-

tial differences in other contexts. Although it may well be that the limitation of the claim under the Waterbury application resulting in Reissue No. 24,465 of the original Patent No. 2,574,676 upon which defendants' position is premised, reduced its contribution to the prior art to only the bifurcation of the lever, that point is not before me. That Jones' exemplification involved a lever that by rocking around the pivot would exert the prying force against the toggle no matter which direction the lever was moved, does not preclude application of the doctrine of equivalents. An infringement may be found, and by the same token equivalents may be recognized, even though the infringing device utilizes only a part of a patent in suit, or otherwise utilizes it imperfectly. Nor need we be concerned with defendants' argument that if it be considered that Jones, under the doctrine of equivalents, assumed to preempt all release mechanisms interposed between the two handles, his patent would be void for the indefiniteness of his disclosure. The point determinative here is that there is nothing indefinite about the camming force pivoting on the movable handle and acting on the toggle link in the manner described in the Jones disclosure and his claim 1, which in essence is equivalent and really the same in substance as its pivoting on the toggle link and camming on the movable handle as applied by the accused device. The substantial identity of the devices in this respect is quite apparent from an examination of the two models. The formal variations are those that readily would suggest themselves to anyone skilled in the art and acquainted with the Jones device. The mere variation in the respect mentioned does not change the essential nature of Jones' patented invention, or permit one so simply to pirate it with impunity, unless for some reason connected with the file history of the claim an estoppel can be invoked.

15. I can perceive no controlling significance one way or another in the failure of the patent office personnel to involve Waterbury in the interference proceedings in which the Jones' claim was sustained. If he had been brought in, the point decided here may have been resolved, but it wasn't and it seems profitable to neither party to speculate on the reasons now. Such speculation would be more of a weak reed than a sword, but to the extent it seems the latter, it cuts both ways. Defendants' assertion of file wrapper estoppel, directed to claim 1 only, is believed not to be supported by the evidence. The record is equivocal to some extent as to whether the amendment of the original claims were required to be made because of enlarged coverage, or because of mere indefinite form or their references to function rather than structure. It seems more likely that the latter type of objections brought about the changes and that there was no relinquishment of the broader claims in substance intended to be exacted on the one hand, or conceded on the other. Under such circumstances, the prima facie validity of the patent, including its protection against infringement by equivalent devices, and the subsequent approval of claim 5 reading directly upon the accused device, lead me to find that the claim of file wrapper estoppel has not been sustained. Claim 1 is infringed by the accused devise.

16. Although the plaintiffs admit that the terms of claim 4 are specifically directed to the improvement wherein the release lever is pivoted on the movable handle, defendants' wrenches achieve the same result by a mere reversal of the parts defined in said claim, and thus, under the doctrine of equivalents, claim 4 covers the defendants' wrench. Claim 4 is infringed by the accused devise.

17. As indicated above, the plaintiff Jones was the first in the art to disclose a release lever between the handles of a plier-type toggle wrench which lever cooperated with the movable handle and toggle link to pry open the jaws of said wrench. Accordingly, I find that the Jones patent discloses a pioneer invention, and the claims of such type patent are entitled to an interpretation with a full range of equivalents.

If I should have erred in this point, which may be a rather close one, I find that the plaintiff Jones is entitled to the benefit of the doctrine of equivalents to some substantial extent at least, by reason of this important contribution to the art and by reason of the necessity of departing reasonably from technical limitations to achieve a just and equitable result by looking to the substance rather than the form. Hence, in any event, the circumstances not warranting the narrowest application of the doctrine, the doctrine should be held to protect the plaintiffs here.

18. Claim 5 is the broadest of the three claims charged to be infringed and defendants admit that such claim reads directly on the devices made and sold by them. It is apparent from the file history of the Jones patent in suit that Jones' present claim 5 was originally claim 26 of the Jones' patent application, which was first presented in the Jones application on December 6, 1949, for the purpose of covering the Seymour Smith Snap-Lock Wrench, which had a release lever pivotally mounted on the toggle link and camming against the movable handle, as does the defendant Parker's wrench charged to infringe Jones' claim 5. The Seymour Smith wrench had been publicly sold by Seymour Smith & Son, Inc., of Oakville, Connecticut, at least as early as August 1948, and the plaintiff Jones himself had bought one of the Seymour Smith wrenches, which was shipped to him on November 4, 1948. The toggle wrench with release lever which the plaintiffs charge now infringes Jones' claim 5 was thus in public use more than one year before claim 5 was presented in the Jones application. However, as heretofore found, Jones, prior to any disclosure by others, was the first to make a model of a lever camming on the movable handle of a wrench and pivoting on the toggle link. This variation was equivalent to Jones' original disclosure and claim 5 in essence was merely a formal change to assure the complete protection for what the applicant originally intended to reserve to himself,

and which I believe he theretofore had in fact and law secured under the doctrine of equivalents. In this sense claim 5 went no farther than to make express what must be regarded as an equivalent of the original disclosure and claims. Seymour Smith's wrench did not constitute an intervening right, as the doctrine of equivalents applied to them as well as to defendants. The validity of the Jones patent later was recognized, among others, by Seymour Smith & Son, Inc., which took licenses under the patent in suit and which licenses were later cancelled for failure to comply with the terms of the agreement. Seymour Smith & Son, Inc., under its license from plaintiff-patentee Jones, manufactured and sold a wrench in which the release lever thereof was pivoted on the toggle link in much the same manner as defendants' release lever. Claim 5 is infringed by the accused device.

19. The prior art introduced by the defendants does not anticipate the invention of plaintiffs' said patent, nor does it limit the scope of protection afforded by the claims of said patent.

From the foregoing Findings of Fact, the Court now draws the following:

### Conclusions of Law

1. The Court has jurisdiction over the subject matter of this action and the parties.

2. Claim 5 of the Jones patent in suit is fully supported by the original disclosure, is not anticipated by the prior art, and specifically reads on the defendants' wrenches charged to be an infringement.

3. Claim 5 is valid and infringed.

4. Claim 1 of the Jones patent in suit is supported by the original disclosure and is not anticipated by the prior art. While the specific terms of claim 1 do not read directly on the defendants' devises, the same, nevertheless, cover defendants' structure under the doctrine of equivalents.

5. Claim 1 is valid and infringed.

6. Claim 4, under the doctrine of equivalents, covers the defendants' wrenches.

7. Claim 4 is valid and infringed.

8. Plaintiffs are entitled to a decree and order for a complete accounting.

9. With respect to the problem of whether defendant Sears, Roebuck & Co. is "a willful infringer subject to treble damages" as plaintiffs contend, the Court does not consider itself sufficiently advised to make findings and conclusions, hereby expressly reserves jurisdiction to supplement these findings of fact and conclusions of law on that point, and directs that respective parties, within a period of thirty days from date hereof, serve and submit to the Court proposed supplemental findings and supporting briefs on facts and law with respect thereto. It is further ordered that within a period of thirty days counsel for plaintiffs submit alternate forms of a decree and order for an accounting herein relating respectively to the possible findings and conclusions of the Court on the reserved point.